UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
RODNEY SMITH, et. al.,

|                           | |                                       |
|---------------------------|-|---------------------------------------|
|                   Plaintiff, | | **PLAINTIFFS'** |
|                           | | **MEMORANDUM OF** |
|                           | | **LAW IN OPPOSITION** |
|       -against-           | | **TO DEFENDANTS'** |
|                           | | **MOTION FOR A** |
| THE CITY OF NEW YORK, et. al., | | **PROTECTIVE ORDER** |
|                           | | |
|                   Defendants. | | 15 CV 3859 (PKC)(CLP) |

--------------------------------------------------------X

Plaintiffs submit this memorandum of law in support of their opposition to defendants'

motion for a protective order.

## POINT I

### THE LAW ENFORCEMENT PRIVILEGE DOES NOT PREVENT DISCLOSURE

The purpose of the law enforcement privilege is "to prevent disclosure of law enforcement

techniques and procedures, to preserve the confidentiality of sources, to protect witness and law

enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and

otherwise to prevent interference with an investigation."  In re Dep't of Investigation of City of

New York, 856 F.2d 481, 484 (2d Cir. 1988).  In the aforementioned case, the New York City

Department of Investigation was found in contempt for refusing to produce subpoenaed documents

to a criminal defendant.   The documents in question contained transcripts of testimony taken

before a commission, as well as notes and memoranda compiled by the commission.

The issue before the Second Circuit was whether the commission in question was an integral

part of a criminal investigation.  Because the Second Circuit concluded that it was, it ruled that the

law enforcement privilege applied as "disclosure would thus reveal law enforcement techniques and

procedures as well as confidential sources, precisely the result the law enforcement privilege is

designed to prevent." Id. at 485. Accordingly, documents that may be part of an internal governmental investigation could be subject to protection under the law enforcement privilege.

However, as Judge Weinstein has observed in King v Conde:

> [t]he party seeking to invoke the privilege bears the burden of justifying its application. *See Von Bulow v. Von Bulow*, supra, 811 F.2d [136] at 144 [(2ⁿᵈ Cir. 1987)]; *Burke v. New York City Police Department*, *supra*, 115 F.R.D. [220] at 224 [(S.D.N.Y. 1987)]. The government must specify "which documents or class of documents are privileged and for what reasons." *Kerr v. United States District Court, supra,* 511 F.2d [192] at 198 [(9th Cir.1975)]. This threshold showing must explain the reasons for nondisclosure with particularity, so that the court can make an intelligent and informed choice as to each requested piece of information. "Unless the government, through competent declarations, shows the court *what interests* [of law enforcement ...] would be harmed, *how* disclosure under a protective order would cause the harm, and *how much* harm there would be, the court cannot conduct a meaningful balancing analysis." *Kelly* [*v. City of San Jose* ], *supra,* 114 F.R.D. [653] at 669 [N.D.Cal.1987] (emphasis in original). If the police make no such showing, the court has "no choice but to order disclosure." *Id.; see also Johnson v. McTigue,* [122 F.R.D. 9 (S.D.N.Y.1986) ] (ordering direct disclosure without *in camera* review); *Martin v. New York City Transit Authority,* No. CV–83–3991, slip op. (S.D.N.Y. Oct. 17, 1983) (same).

*King v. Conde,* 121 F.R.D. 180, 189 (E.D.N.Y. 1988) (emphasis in original).

Accordingly, to invoke the law enforcement privilege, a governmental body needs to show a specific harm if the information were disclosed. S.E.C. v. Thrasher, 1995 WL 46681 * 10, No. 92 Civ. 6987 (JFK) (S.D.N.Y. Feb. 7, 1995). In Thrasher, the Securities and Exchange Commission submitted two declarations and attempted to invoke the privilege based on a sentence in one of the declarations "[t]he law enforcement privilege is being asserted as to these documents because they contain law enforcement investigatory materials, production of which could impair the Commission's future enforcement efforts in this and other matters." Id. The court concluded that that statement was a "conclusory assertion of general and speculative harm" that was "inadequate to meet even the most liberal definition of the Commission's burden of proof." Id.

In discussing the privilege, Judge Weinstein stated:

> The privilege will be deemed asserted when the objecting party timely invokes the privilege as to each discovery request thought to invade the privilege. Accompanying these objections must be "a declaration or affidavit, under oath and penalty of perjury, from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration." *Kelly, supra,* 114 F.R.D. at 669. This statement must be based on personal review of the documents by an official in the police agency (not the defendants' attorney) and must explain (not merely state conclusorily) how the materials at issue have been generated or collected; how they have been kept confidential; what specific interests (e.g. of the police officers, of law enforcement, or of public concern) would be injured by disclosure to plaintiff, to plaintiff's attorney, and to the public; and the projected severity of each such injury. This procedure should discourage applications for non-revelation in all but deserving cases. Pro forma applications may lead to Rule 11 sanctions.

King v. Conde, 121 F.R.D. 180, 189 (E.D.N.Y. 1988)

In this case, the defendants have not met their burden.  They have submitted no affidavits or declarations articulating their need to keep the video from being viewed by plaintiffs.  The closest defendants come to enunciating a reason is a sentence on page 4 of their Memorandum of Law: "[a]llowing plaintiffs to view and discuss the footage with their attorneys outside of this process would likely interfere with recollections, statements and the gathering of evidence for the investigation."  See Docket Entry 15, p. 7.  Such a statement is strikingly similar to sentence in the Thrasher case, discussed *supra*, that the court found inadequate.

Moreover, the defendants have all but conceded that the video does not contain anything worth protecting when they assert on page 5 of their Memorandum of Law "[t]here is simply no compelling information contained within the video that is not available in some other medium."  If that is the case then there is no compelling reason for the video to be protected.

Defendants in their Memorandum of Law cite to Dinler v. City of New York, to support their assertion that once the privilege has been established the burden shifts to plaintiff to establishing this compelling need.  In the online legal databases the case is cited as In re The City of New York, 607 F.3d 923 (2d Cir. 2010).  What defendants failed to point out is that the opinion

goes further.  The case provides courts within this circuit with a roadmap when dealing with the

issue of the law enforcement privilege with a section entitled "IV. How to Analyze Claims of Law

Enforcement Privilege."

> Specifically, the party asserting the privilege must show that the documents in question contain (1) information pertaining to "law enforcement techniques and procedures," *Dep't of Investigation,* 856 F.2d at 484, (2) information that would undermine "the confidentiality of sources," *id.,* (3) information that would endanger "witness and law enforcement personnel," *id.,* (4) information that would undermine "the privacy of individuals involved in an investigation," *id.,* or (5) information that would seriously impair "the ability of a law enforcement agency to conduct future investigations," *Morrissey* [v. City of New York]*,* 171 F.R.D. [85] at 90 [(S.D.N.Y. 1997)].

<u>In re The City of New York</u>, 607 F.3d 923, 948 (2d Cir. 2010).

The video in question, based upon representations made by counsel, merely captures the

incident.  It does not contain any "techniques or procedures."  Similarly, defendants are not arguing

that the video would undermine the confidentiality of sources. Defendants' main point is that they

do not want the plaintiffs to see the video before defendants get an opportunity to view it.  As to the

third prong, defendants have not articulated any threat to witnesses or personnel.  Likewise, there is

no indication that privacy concerns are a concern.  Finally, allowing plaintiff to view a video where

they were involved would not impair the agency's ability to conduct future investigations.

Accordingly, defendants have failed to meet their burden that the privilege applies to the video.

Assuming arguendo that the Court disagrees, then the burden would shift to plaintiff to

show

> (1) that the suit is "non-frivolous and brought in good faith," *Friedman* [*v. Bache Halsey Stuart Shields, Inc.*]*,* 738 F.2d [1336] at 1343 [D.C. Cir. 1984)], (2) that "the information sought is [not] available through other discovery or from other sources," *id.,* and (3) that the party has a "compelling need for the privileged information," *Marriott Int'l Resorts, L.P.* [*v. United States*]*,* 437 F.3d [1302] at 1307 [(Fed. Cir. 2006)]. If the presumption against disclosure is successfully rebutted (by a showing of, among other things, a "compelling need"), the district court must then weigh the public interest in nondisclosure

against the need of the litigant for access to the privileged information before ultimately deciding whether disclosure is required.

In re The City of New York, 607 F.3d 923, 948 (2d Cir. 2010)

In this instance, defendants would have a hard time asserting that the first prong is not met, plaintiffs' claims are on-frivolous and brought in good faith. As to the second, defendants claim that the information contained in the video could be sought elsewhere.  However in order to do that they would want plaintiffs to accept at face value the reports and accounts of defendants as to what transpired during the event and to trust that defendants obtained the names and identities of all the parties involved.  Plaintiffs are under no obligation to do that.  Especially in this instance where there is a video where plaintiffs can see for themselves who was present and what they were doing, plaintiffs should be allowed to see the video.

As to the third prong, plaintiffs have a compelling need.  Plaintiffs need to see the video to not only help them refresh their recollection as to their own involvement but to also determine the involvement of the defendants, as well as any other officers who may need to be joined as defendants.  Furthermore, plaintiffs should be allowed to see the video to help identify any potential witnesses. Without the video, it will be challenging and time consuming to locate potential witnesses. Most inmates at Rikers Island are transient and their identities are not readily available.  Any delay in seeking out and locating these witnesses greatly prejudices plaintiffs' case and wrongfully benefits the defendants.

**POINT II**

**DEFENDANTS' CONSTRAINTS UNDER
GEN. MUN. LAW § 50-K ARE IRRELEVANT**

Defendants' counsel's argues that because they cannot show the defendants the video (as defendants are facing disciplinary or criminal charges) plaintiffs should be deprived of the opportunity to view the video as well.  There is no quid pro quo in defendants' obligations to comply with discovery.  The current posture of defendants' internal proceeding should have no bearing on whether plaintiffs should be allowed to see, view and discuss highly relevant discovery with their attorneys.  Accordingly, defendants should be compelled to produce the video to plaintiffs irrespective of defendants' ability to view the video.

**CONCLUSION**

For the foregoing reasons, plaintiff seeks an order: 1) denying defendants' motion for an Attorneys Eyes Only Protective Order, and 2) compelling defendants to produce the video forthwith, without the need for any protective order.

Dated:        New York, New York
              December 30, 2015

                                              /s
                                        Robert Marinelli
                                        Attorney for Plaintiffs
                                        305 Broadway, 9th Floor
                                        New York, New York  10007
                                        (212) 822-1427
                                        robmarinelli@gmail.com